IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Louis Garrett, Jr., | ) | C/A No. 0:18-1418-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND** |
| | ) | **REPORT AND RECOMMENDATION** |
| Aull; Beckett, Jr.; T. Esterline; James Parrish; | ) | |
| Travis H. Napier; Dr. Koon; Dr. T. Ergen; Dr. | ) | |
| Arrojas; Dr. Compton; Pamela Derrick; Gina | ) | |
| Williamson; Dr. Bryne, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robert Louis Garrett, Jr., a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. Garrett filed this action *in forma pauperis* under 28 U.S.C. § 1915 and § 1915A. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motions for summary judgment. (ECF Nos. 232, 278, & 298.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Garrett of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 233, 279, & 299.) Garrett moved for and was granted numerous, lengthy extensions of time in which to file a response. (See, e.g., ECF Nos. 237, 243, 264, 265, 275, 288, 289, 301, 303, & 304.) In its September 4, 2020 order, the court warned Garrett that this action may be dismissed for failure to prosecute or may be decided on the record presented in support of the defendants' motion if Garrett failed to file a response. (ECF No. 304.) Despite having had over nine months in which to do so, Garrett has failed to file any response within the court's deadlines to the motion for summary judgment filed by Defendants Aull, Beckett, Esterline, and Parrish, and likewise has failed to file any response to the motions for summary judgment filed more recently by Defendants

Arrojas, Ergen, Bryne, Compton, Derrick, Napier, and Williamson.[1]    Accordingly, having reviewed the record presented and the applicable law, the court concludes that the medical defendants (Defendants Arrojas, Ergen, Bryne, Compton, Derrick, and Williamson) are entitled to summary judgment.[2]    Additionally, Defendants Parrish and Napier are entitled to summary judgment as to Garrett's allegations regarding the May 25, 2016 incident.  However, the court finds that Defendants Aull, Beckett, Esterline, and Parrish have failed to demonstrate they are entitled to summary judgment as to the allegations regarding multiple instances of excessive force and retaliation that occurred between January 2016 and May 2016.

---

[1] Garrett filed another motion requesting an extension of time on November 9, 2020.  (ECF No. 308.)  In his motion, Garrett maintains that extraordinary circumstances warrant additional time because the defendants refuse to turn over critical discovery material and because he still does not have adequate access to the law library and typewriter.  The issue regarding discovery in this matter has been fully litigated and resolved as of June of 2020.  Additionally, Garrett has provided the court with hundreds of pages of written pleadings in his federal cases, so it is unclear how the lack of access to a typewriter is critical for Garrett's filing a response to the defendants' motions.  Furthermore, Garrett concedes that he has some access to the law library, but argues that it is insufficient.  All of these arguments fail to show the extraordinary circumstances or good cause necessary to warrant yet another extension of Garrett's deadlines.  Accordingly, Garrett's motion for an extension of time is denied.

[2] Default as to Defendant Compton was entered on April 9, 2020 because of his failure to file an answer.  See Fed. R. Civ. P. 55(a).  However, this defendant has now defended his case by moving for summary judgment.  (ECF No. 298.)  Accordingly, that entry of default should be set aside.  See Fed. R. Civ. P. 55(a), (c).

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Garrett, to the extent they find support in the record.[3]  Garrett alleges that while he was housed at Broad River Correctional Institution ("BRCI"), multiple incidents of excessive force occurred between the months of January and May of 2016.  Garrett alleges that prior to each of these incidents, Garrett requested to see his mental health counselor and Defendants Aull, Beckett, Esterline, and Parrish "sadistically and maliciously" responded by spraying him with chemical munitions and did not allow him to decontaminate.  (Am. Compl. ¶¶ 40-43, ECF No. 183 at 5.)  Garrett alleges that on another occasion in April or May of 2016, after being sprayed with chemical munitions by Defendants Parrish and Aull, Parrish removed Garrett's clothes and exposed him to a female nurse and mental health counselor.  (Id. ¶ 44.)  He alleges that all of these defendants used unnecessary force against him in retaliation for filing grievances against them.  (Id. ¶¶ 45-46.)

Garrett further alleges that another incident occurred on May 25, 2016 involving Defendants Parrish and Napier.  Garrett alleges that when he requested to see his mental health counselor, Parrish responded by spraying an excessive amount of chemical munitions into Garrett's cell.  (Id. ¶¶ 54-55, ECF No. 183 at 6.)  Garrett further alleges that these defendants used a ramming tool with a hook on it which ripped Garrett's right hand open, severing tendons and

---

[3] Garrett's initial Complaint filed in C/A No. 0:18-1309 contains allegations against numerous defendants spanning a large period of time and occurring at several different South Carolina Department of Corrections ("SCDC") facilities.  In its May 24, 2018 Order, the court determined that Garrett's claims should be severed into four civil actions.  (See ECF No. 1.)  Accordingly, only Garrett's allegations against Defendants Aull, Beckett, Esterline, and Parrish regarding multiple incidents that occurred at Broad River Correction Institution between January 2016 and May 2016 are relevant to the instant civil action.  (Id. at 2.)  Garrett later filed a verified Amended Complaint that contains only the allegations specific to this civil action and that added Defendants Napier, Koon, Ergen, Arrojas, Compton, Derrick, Williamson, and Bryne.  (ECF No. 183.)

damaging nerves and leaving his hand permanently scarred and deformed. (Id. ¶¶ 56-57, ECF No. 183 at 6-7.)

Garrett alleges that, following the May 25, 2016 incident, he was denied proper medical care as prescribed by Dr. John Walsh, the physician who treated him at the hospital and surgically repaired his hand. Garrett alleges that upon his return to BRCI from the hospital, he did not receive any pain medication at all for over a week, and then was given only Tylenol instead of the Oxycodone prescribed by Dr. Walsh, which caused him to "suffer in pain . . . for weeks." (Id. ¶¶ 80-81, 85, ECF No. 183 at 11.) Garrett alleges that Defendants Koon, Arrojas, and Ergen, doctors who worked at the orthopedic clinic at Kirkland Correctional Institution ("Kirkland"), denied him the prescribed pain medication, did not allow him his follow-up visit with Dr. Walsh, and generally did not follow Dr. Walsh's instructions, causing Garrett's hand to heal improperly. (Id. ¶¶ 86-87, 91, ECF No. 183 at 11-12.) Garrett further alleges that, after he was transferred to Lee Correctional Institution ("LCI") from June 2016 to June 2017 and then to Allendale Correctional Institution ("Allendale") from June 2017 to August 2018, Defendants Williamson, Compton, Derrick, and Bryne likewise failed to comply with Dr. Walsh's instructions, causing Garrett to experience continued pain and preventing his hand from healing properly. (Id. ¶¶ 93-96, ECF No. 183 at 13.)

The court construed Garrett's Amended Complaint as alleging only claims pursuant to 42 U.S.C. § 1983 for excessive force, deliberate indifference, and retaliation.[4] (Order, ECF No. 191 at 1.) No party challenged this construction of the claims. Garrett seeks monetary and injunctive relief. (Am. Compl., ECF No. 183 at 16.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

---

[4] Garrett's Amended Complaint clearly distinguishes between his claims regarding the incidents of excessive force and his claims regarding the deliberate indifference to his medical care following his injury. Accordingly, the court construes Garrett's Amended Complaint as alleging claims of excessive force and retaliation against Defendants Aull, Beckett, Esterline, and Parrish for multiple incidents that occurred between the months of January 2016 and May 2016; claims of excessive force against Defendants Parrish and Napier regarding the incident that occurred on May 25, 2016; and claims of deliberate indifference to medical needs against the medical defendants (Koon, Ergen, Arrojas, Compton, Derrick, Williamson, and Bryne). To the extent Garrett is attempting to assert any other claims, his Amended Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendant Koon**

The court issued an order on November 6, 2019, authorizing the issuance and service of process on Defendant Koon and directing the United States Marshals Service to serve the Summons and Amended Complaint, as Plaintiff was granted leave to proceed *in forma pauperis*. (ECF No. 191); see Fed. R. Civ. P. 4(c)(3); 29 U.S.C. § 1915(d).  The court's order stated that "[i]f the information provided by Plaintiff . . . is not sufficient for the Marshal to effect service of process, . . . the Marshal should so note in the 'Remarks' section at the bottom of the Form USM-285." (ECF No. 191 at 2.)  Plaintiff was also specifically advised that "[p]laintiff must provide, and is responsible for, information sufficient to identify the defendant," that "[t]he United States

Marshal cannot serve an inadequately identified defendant," and that "**[u]nserved defendants may be dismissed as parties to this case.**" (Id.)  Review of the docket discloses that the summons for Defendant Koon was returned unexecuted on December 16, 2019.  (ECF No. 199.)  The court issued an order on December 20, 2019 notifying Plaintiff that Defendant Koon's summons was returned unexecuted, reminding him that he was responsible for providing information sufficient to identify this defendant, and directing him to complete a new Form USM-285 with information sufficient to identify or locate Defendant Koon.  (ECF No. 201 at 1.)  Although Plaintiff returned a USM-285 form, he did not comply with the court's order to provide more accurate information as to Defendant Koon.  Accordingly, the court issued an order on March 12, 2020 declining to authorize additional attempted service on Defendant Koon at that time.  (ECF No. 244.)

Pursuant to Federal Rule of Civil Procedure 4(m), service of process generally must be effected on a defendant within ninety days of filing the Complaint.  In this case, over ninety days has passed since the issuance of the initial order directing service of process.  See Robinson v. Clipse, 602 F.3d 605, 608-09 (4th Cir. 2010) (tolling the time period for service during initial review).  After review of the returned summons, the court concludes that the investigative efforts of the United States Marshals Service were reasonable.  See Greene v. Holloway, No. 99-7380, 2000 WL 296314, at *1 (4th Cir. 2000) (citing with approval Graham v. Satkoski, 51 F.3d 710 (7th Cir. 1995)).  Plaintiff failed to follow the court's instructions by providing more accurate information for Defendant Koon, as is his responsibility.  Accordingly, the court determines that Defendant Koon has not been properly served within the applicable time period.  Plaintiff's claims against this defendant should therefore be dismissed without prejudice pursuant to Rule 4(m).

**C.     Eighth Amendment—Excessive Force**

**1.     Excessive Force Generally**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his claim under the Eighth Amendment, the plaintiff must demonstrate: (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' " Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, the objective component is "contextual and responsive to 'contemporary standards of decency.' " Id. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Accordingly, "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation,"

and it may also provide an indication of the amount of force that was applied. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7). In an excessive force analysis, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

**2.    Garrett's Claims**

As described above and as identified by the court, Garrett raises claims of excessive force against Defendants Aull, Beckett, Esterline, and Parrish regarding multiple incidents that occurred at BRCI between January and May of 2016.  (See Order, ECF No. 1 at 2; Order, ECF No. 191 at 1.)  Specifically, Garrett alleges that during this time period, on at least three occasions Garrett requested to see his mental health counselor and Defendants Aull, Beckett, Esterline, and Parrish "sadistically and maliciously" responded by spraying him with chemical munitions and did not allow him to decontaminate.  (Am. Compl. ¶¶ 40-43, ECF No. 5.)  Garrett alleges that on another

occasion in April or May of 2016, after being sprayed with chemical munitions by Defendants Parrish and Aull, Parrish removed Garrett's clothes and exposed him to a female nurse and mental health counselor. (Id. ¶ 44.) He alleges that all of these defendants used unnecessary force against him in retaliation for filing grievances against them. (Id. ¶¶ 45-46.)

Garrett further alleges that on May 25, 2016, he got into an argument with a nurse and concedes that he cursed at her and threw water at her. (Id. ¶ 53, ECF No. 183 at 6.) Garrett alleges that, following this incident, Defendants Parrish and Napier came to Garrett's cell, and when Garrett requested to see his mental health counselor, Parrish responded by spraying an excessive amount of chemical munitions into Garrett's cell. (Id. ¶¶ 54-55.) Garrett further alleges that these defendants used a ramming tool with a hook on it which ripped Garrett's right hand open, severing tendons and damaging nerves and leaving his hand permanently scarred and deformed. (Id. ¶¶ 56-57, ECF No. 183 at 6-7.)

In support of their motions for summary judgment, the defendants have provided the Use of Force Report and various incident reports relating to the May 25, 2016 incident only, and excerpts from Garrett's medical records from mid-June 2016 through April 2018.[5] As stated above, Garrett failed to file any response to the defendants' motions.

### 3. Allegations of Repeated Incidents of Excessive Force and Retaliation Occurring Between January 2016 and May 2016 Against Defendants Aull, Beckett, Esterline, and Parrish

Although the defendants acknowledge that Garrett raises claims against these defendants for multiple incidents of excessive force and retaliation, citing both to Garrett's Amended

---

[5] Although the defendants reference the videotape of the May 25, 2016 incident as an exhibit to their motion, no such videotape was provided to the court. Further, even though a deputy clerk of court inquired into defense counsel's failure to actually provide the exhibit to the court, to date no videotape has been submitted.

Complaint and to the court's order construing these claims, the defendants address only the excessive force incident that occurred on May 25, 2016, which involved only Defendants Parrish and Napier.  (See Mem. Supp. Summ. J., ECF No. 232-1.)  Accordingly, as Defendants Aull, Beckett, Esterline, and Parrish do not appear to have moved for summary judgment as to any of the alleged incidents involving these defendants and occurring between January 2016 and May 2016, Garrett's claims of excessive force against these defendants should proceed.  Similarly, the defendants have failed to address Garrett's claim that the force was used against him in retaliation for filing grievances against them. [6]  Booker v. SCDC, 855 F.3d 533 (4th Cir. 2017) (holding that the First Amendment provides prisoners the right to file a prison grievance free from retaliation by prison officials).

### 4.     May 25, 2016 Incident—Defendants Parrish and Napier

Examining the facts in the record and applying the Whitley factors, the court concludes on the record presented that no reasonable jury could find that the actions of Defendants Parrish and Napier violated the Eighth Amendment.  Importantly, as admitted by Garrett in his Amended Complaint, Garrett had cursed at and thrown liquid from his cup at a nurse, had purposely obstructed his food service flap, and intentionally threw items at Defendants Parrish and Napier when they came to Garrett's cell.  (Am. Compl. ¶¶ 53-55, ECF No. 183 at 6.)  Other unrefuted evidence in the record shows that Garrett refused multiple directives to remove the blockage from

---

[6] To the extent these defendants argue generally that they are entitled to qualified immunity on these incidents, they have similarly failed to offer any support for this argument.  However, the defendants correctly argue that, to the extent that Garrett seeks monetary relief against them in their official capacities, as SCDC employees and arms of the state they are entitled to summary judgment.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989) (holding that sovereign immunity protects both the state itself and its agencies, divisions, departments, officials, and other "arms of the State."); see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

his food service flap and that, when Parrish and Napier attempted to remove the blockage, Garrett threw urine and feces on them as well as attempted to attack them with a homemade weapon. (Use of Force & Incident Reports, ECF No. 232-2 at 4-5, 7, 9, 13.) Thus, the only reasonable conclusion on this record is that Garrett's repeated noncompliance and recalcitrant behavior necessitated the use of force. See Whitley, 475 U.S. at 321; Bailey, 736 F.2d at 969-70; Brown v. Eagleton, C/A No. 4:14-cv-357-BHH, 2015 WL 5781504 (D.S.C. Sept. 30, 2015) (rejecting the argument that "prison officials may not use mace or chemical munitions on disruptive prisoners who are locked in a cell and may only use write ups and the loss of privileges to secure compliance and maintain discipline").

In his Amended Complaint, Garrett suggests that the amount of chemical munitions deployed demonstrates that the defendants used excessive force. As stated above, the use of chemical munitions by prison officials is not a violation of a prisoner's constitutional rights when used appropriately. See Williams, 77 F.3d at 763. In examining the second factor under Whitley, the court observes that, though the total amount in this case is not small, the record before the court shows that Garrett was given multiple opportunities to comply with directives and that he refused to comply. Cf. Arnold v. South Carolina Dep't of Corrs., C/A No. 9:13-1273-JMC, 2014 WL 7369632, at *6 (D.S.C. Dec. 29, 2014) (concluding that the use of fogger to disperse multiple bursts of chemical munitions was not excessive when considering the arguments and evidence presented and the Whitley factors). Additionally, the defendants have presented unrefuted evidence that the chemical munitions were dispersed generally and incrementally into the cell over a period of time and that Garrett had taken measures to actively defend against the chemical munitions by blocking his food service flap with a blanket, which would necessitate a larger amount of chemical munitions be used in order to be effective. (Use of Force Report, ECF No.

232-2 at 4) (noting that the majority of the chemical munitions dispersed did not make it into the cell due to Garrett blocking his food service flap).  Significantly, there is no evidence in the record—nor does Garrett allege—that any application of force continued after he had been restrained.  Accordingly, under the circumstances presented here, the only reasonable inference is that multiple bursts of chemical munitions were rendered in repeated attempts to restore order and institutional security rather than maliciously or sadistically to cause harm.  See Whitley, 475 U.S. at 322; Bailey, 736 F.2d at 969-70.

Examining the extent of injury actually inflicted, the court observes that the parties do not appear to dispute that Garrett suffered significant injury to his right hand during this incident.  However, the defendants have presented unrefuted evidence that sheds additional light on how Garrett's injury occurred.  As detailed in the Use of Force and Incident Reports, Defendant Parrish was using a "push pole tool" to attempt to unblock Garrett's food service flap when Garrett grabbed the tool and attempted to pull it into his cell.  (ECF No. 232-2 at 4-5, 7, 9-10, 13.)  When Parrish and Napier pulled the tool back, Garrett's hand was severely lacerated by the hook at the end of the tool.  (Id.)  After Garrett was compliant and allowed himself to be handcuffed, it took approximately forty-five minutes to remove Garrett from his cell because Garrett had jammed the lock on his cell door.  (Id.)  However, as soon as the cell door lock was cleared, Garrett was taken to the medical department for initial treatment which included decontamination from the chemical munitions, and then was transported to the hospital for further treatment for his hand.  (Id.)  Again, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that the defendants' use of force and chemical munitions was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 559 U.S. at 37; see also Whitley,

475 U.S. at 321-22; <u>Bailey</u>, 736 F.2d at 969-70; <u>Williams</u>, 77 F.3d at 763.  Indisputably, the need for force was increased in light of Garrett's admitted attacks on the guards with a homemade weapon and urine and fecal matter, a criminal act.  <u>See</u> S.C. Code Ann. § 24-13-470 (describing the crime and penalties for the "throwing of body fluids on correctional facility employees and certain others").  Moreover, while the extent of Garrett's injury was not insignificant, the unrefuted evidence in the record makes it clear that the defendants' use of the push pole tool was an attempt to clear the blocked food service flap, and that Garrett's injury occurred only when Garrett grabbed ahold of the tool in an attempt to pull it into his cell.  Thus, examining the totality of the undisputed circumstances the court concludes that no reasonable jury could find that the defendants' use of chemical munitions and force was not commensurate with the reasonably perceived threat posed by Garrett, or was done wantonly to inflict pain and was not applied in a good faith effort to restore order.  Summary judgment should therefore be granted as to these defendants' May 25, 2016 use of force.

**D.      Eighth Amendment—Deliberate Indifference to Medical Needs**

**1.      Deliberate Indifference Generally**

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976).  To satisfy the subjective prong of an Eighth Amendment claim, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety.  <u>Farmer</u>, 511 U.S. at 834.  A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. <u>Id.</u> at 847; <u>Parrish v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004).  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.    However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)).   Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 789 F.3d at 133 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.   To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).   Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.   See Estelle, 429 U.S. at 106.   While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).   "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

### 2.     State Actors

As an initial matter, Defendants Dr. Ergen and Dr. Arrojas argue that they are not state actors and therefore are not liable under 42 U.S.C. § 1983.   (Defs.' Mem. Supp. Summ. J., ECF No. 278-1 at 3-4.)   These defendants state that they are not employees of the state, but rather

employees of Prisma Health who volunteer their medical services to prisoners.  (Id. at 4.)  As to the claims in the instant matter, these defendants treated Garrett at the orthopedic clinic at Kirkland following surgery on Garrett's hand.

As pointed out by the defendants, to state a claim under § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  In West, the Supreme Court made clear that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state.  Id. at 54-55.  The West Court held that a private physician under contract with the state to provide medical services to prison inmates, but not employed directly by the state, nonetheless acts under the color of state law when treating an inmate.  Id. at 54-57.

However, the United States Court of Appeals for the Fourth Circuit extended West to "private physicians who treat state prisoners without the benefit of a contract," stating as follows:

> Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state.  If the physician abuses this power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law—not because the state has employed a bad physician, but because the state has incarcerated the prisoner and denied him the possibility of obtaining medical care on his own.

> We believe that the Supreme Court's analysis [in West] applies also to private physicians who treat state prisoners without the benefit of a contract.  Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician.  Even where a physician does not have a contractual relationship with the state, the physician can treat a prisoner only with the state's authorization.  If a physician treating a prisoner—whether by contract or by referral—misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.  The source of the deprivation does not change because the physician has no contractual relationship

with the state: the physician acts under color of state law because the state has incarcerated the prisoner and denied him the possibility of obtaining adequate medical care on his own.

Conner v. Donnelly, 42 F.3d 220, 225 (4th Cir. 1994) (internal citations omitted). The defendants do not attempt to distinguish Connor. Accordingly, the court finds that these defendants have failed to carry their burden to show that they did not act under color of state law when providing medical care to Garrett. The court will therefore address Garrett's claims against them on the merits.

### 3.     Garrett's Claims

Garrett alleges that, following the May 25, 2016 incident, he was denied proper medical care as prescribed by Dr. John Walsh, the physician who treated him at the hospital and surgically repaired his hand. Specifically, Garrett references the discharge instructions written by Dr. Walsh that directed Garrett to follow up with Dr. Walsh at the SCDC clinic approximately two weeks later for further management of Garrett's right laceration repair and tendon repair, to keep his splint/dressings on at all times and to keep them clean and dry, to keep his hand elevated, and to receive pain medication in the dose of 5 mg of Oxycodone. (Am. Compl., Exs. 6 & 7, ECF No. 183-1 at 10, 13.) Garrett alleges that upon his return to BRCI from the hospital, he did not receive any pain medication at all for over a week, and then was given only Tylenol instead of the Oxycodone prescribed by Dr. Walsh, which caused him to "suffer in pain . . . for weeks." (Id. ¶¶ 80-81, 85, ECF No. 183 at 11.) Garrett alleges that Defendants Arrojas and Ergen, doctors who worked at the orthopedic clinic at Kirkland, denied him the prescribed pain medication, did not allow him his follow-up visit with Dr. Walsh, and generally did not follow Dr. Walsh's instructions, causing Garrett's hand to heal improperly. (Id. ¶¶ 86-87, 91, ECF No. 183 at 11-12.) Garrett further alleges that, after he was transferred to LCI from June 2016 to June 2017 and then

to Allendale from June 2017 to August 2018, Defendants Williamson, Compton, Derrick, and Byrne likewise failed to comply with Dr. Walsh's instructions, causing Garrett to experience continued pain and preventing his hand from healing properly.  (Id. ¶¶ 93-96, ECF No. 183 at 13.)

Garrett's claim that he was given no pain medication of any kind for over a week following surgery is concerning and could amount to deliberate indifference.  See Carter v. Ulep, C/A No. 1:13CV1425 LMB/JFA, 2014 WL 3421515, at *3 (E.D. Va. July 10, 2014) (citing DeBoer v. Luy, 70 F. App'x 880, 883 (7th Cir. 2003) ("It is true that the refusal to give an inmate *any* prescribed pain medication can amount to deliberate indifference.")).  However, Garrett has failed to name a defendant in his Amended Complaint who deliberately denied medication to Garrett.  Instead, Garrett alleges only that "as soon as he was released from the hospital and transported back to [BRCI]," he spoke to a non-defendant mental health counselor who said that she would contact the medical department to make sure Garrett received his medication, but "whoever she talked to purposely didn't bring Plaintiff anything for pain."  (Am. Compl. ¶ 81, ECF No. 183 at 11.) Accordingly, this claim fails, as the record contains no evidence that any of the named defendants were responsible for such an alleged deprivation.

Garrett concedes that after this period of time of approximately a week, he was given Tylenol and was told that SCDC did not administer "serious drugs like Oxycodone[]."  (Id. ¶ 80.) Again, Garrett does not name a defendant who administered or prescribed this pain medication. However, even if he had, Garrett's disagreement as to the appropriate medication or form of treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact.  See Drakeford v. Mullins, 678 F. App'x 185, 186 (4th Cir. 2017) ("To the extent [the plaintiff] complains that additional, stronger, or more frequent pain medication was required, this, without more, is insufficient to prevail on a deliberate indifference claim.").  Likewise,

Garrett's claims against Defendants Arrojas and Ergen are based on his dissatisfaction that they provided his follow-up treatment instead of Dr. Walsh, as well as differences in their prescribed rehabilitation therapies for Garrett's hand from those suggested by Dr. Walsh.  Similarly, Garrett's claims against Williamson, Compton, Derrick, and Bryne rest on Garrett's allegations that he continued to experience pain, yet these defendants refused to provide him with Oxycodone as prescribed by Dr. Walsh; Garrett concedes, and the record shows, that he received other types of pain medications during this time.  (See generally Med. Recs., ECF No. 298-2.)

Garrett's preference for the treatment suggested by Dr. Walsh over the named defendants' treatment is insufficient to implicate the Eighth Amendment.  As stated above, courts have recognized that "lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."  O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 ("A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").  Here, the record indisputably shows that Garrett had access to medical care and medication on a continual basis while housed within SCDC facilities and under the care of the named medical defendants.  Moreover, Garrett has provided no admissible evidence supporting a finding that he faced "a substantial risk of serious harm" from alleged denial of care

while housed within SCDC as required to establish the objective component of a deliberate indifference claim under the Eighth Amendment.  Farmer, 511 U.S. at 837.  Garrett does not have a constitutional claim against the defendants merely because he disagrees with the course of treatment he received.  See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070.  At most, Garrett's claims against the named defendants allege negligence or medical malpractice, which are not actionable under § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Accordingly, based on the record presented in this case, no reasonable jury could find that the named defendants were deliberately indifferent to Garrett's medical needs.  See Farmer, 511 U.S. at 837.

## RECOMMENDATION

For the above reasons, the court recommends that the medical defendants (Defendants Arrojas, Ergen, Bryne, Derrick, Compton, and Williamson) be granted summary judgment.  (ECF Nos. 278 & 298.)  Additionally, the court recommends that Defendants Parrish and Napier be granted summary judgment as to Garrett's allegations of excessive force regarding the May 25, 2016 incident.  (ECF Nos. 232 & 298.)  The court further recommends that the motion for summary judgment of Defendants Aull, Beckett, Esterline, and Parrish be denied as to the allegations regarding multiple instances of excessive force and retaliation that occurred between January and May of 2016 except to the extent Garrett seeks monetary relief against them in their official

capacities.  (ECF No. 232.)  Finally, the court recommends that Garrett's claims against Defendant

Koon be dismissed without prejudice pursuant to Rule 4(m).

December 17, 2020                           Paige J. Gossett
Columbia, South Carolina                    UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).